**UNITED STATES of America, Plaintiff,**

v.

**NORTH CAROLINA UTILITIES COMMISSION et al., Defendants.**

**Civ. No. 3061.**

United States District Court, E. D. North Carolina, Raleigh Division.

Heard Nov. 9, 1972.

Decided Dec. 20, 1972.

Thomas P. McNamara, U. S. Atty., and Jack B. Crawley, Jr., Asst. U. S. Atty., Raleigh, N. C., for plaintiff.

Edward B. Hipp, Commission Atty., and Maurice W. Horne and William E. Anderson, Asst. Commission Attys., Raleigh, North Carolina, for defendants.

Before CRAVEN, Circuit Judge, and LARKINS and DUPREE, District Judges.

PER CURIAM:

This is an action brought by the United States to enjoin the enforcement of a General Order of the North Carolina Utilities Commission. The order in question purports to set rates which franchised carriers must charge the United States Army for the intrastate transportation of household goods. We find that the state regulation burdens the exercise by the United States of its constitutional power to raise and support armies, U.S.Const. art. I, § 7, and therefore must be enjoined.

I.

The North Carolina Public Utilities Act, Chapter 62 of the North Carolina General Statutes, establishes a comprehensive scheme for the regulation of utilities services in North Carolina, including in certain instances the transportation by motor carriers of passengers or property. Prior to July 14, 1971, N.C.Gen.Stat. § 62–260(a)(1) exempted from regulation transportation furnished by motor carriers to governmental units. However, in July 1971, the North Carolina General Assembly repealed this exemption. Ch. 856, § 1 [1971] Sess.Laws of N.C. Pursuant to the repeal of the exemption, the North Carolina Utilities Commission, on December 2, 1971, issued a General Order in Docket No. M–100, Sub. 47 requiring all franchised common carriers to charge their published tariffs on all intrastate transportation services, including those services provided to governmental bodies.

The United States objects to this order insofar as it affects the charge for services rendered to the United States Army. Of particular importance is the effect of the Commission's order on the intrastate transportation and storage of household goods belonging to members of the Armed Services of the United States. Although these household goods are not directly owned by the United States, the United States is charged by law with the responsibility of moving such household goods. Evidence was introduced showing that annual expenditures by the United States for intrastate storage and transportation within North Carolina of household goods amounted to approximately $3,000,000. Evidence was also introduced that the United States was able to procure these services from franchised carriers at rates lower than those listed in the tariffs.

II.

The issue then is whether this North Carolina regulatory scheme conflicts with federal procurement policy and is thus an unconstitutional burden on the United States. The federal procurement policy is expressed in 10 U.S.C.A. §§

2301–14 and the regulations pursuant thereto.[1]

The federal procurement policy as stated by Congress and as implemented by regulations similar to those relevant here was before the Supreme Court in Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963). In *Paul* the Court stated:

> While the federal procurement policy demands competition, the [state] policy, . . . effectively eliminates competition. The [state] policy defeats the command to federal officers to procure supplies at the lowest cost to the United States by having a state officer fix the price on the basis of factors not specified in the federal law. Moreover, when the supply contract is negotiated because "it is impracticable to obtain competition," to use the statutory words, it is the state agency, not the federal procurement officer and the seller, that determines the price provisions of the contract, if state policy prevails. The collision between the federal policy of negotiated prices and the state policy of regulated prices is . . . clear and acute
>
> . . .

371 U.S. at 253, 83 S.Ct. at 432.

The North Carolina regulatory scheme here eliminates competition in the same manner as the California scheme present in *Paul*. We thus find the North Carolina regulation to be in conflict with the federal procurement policy as construed in *Paul*.

Although *Paul* was decided in 1963, neither party has cited us to, nor have we found, any authority which shows that the congressional policy has been changed since 1963. To the contrary, in 1968 Congress added a subsection to 10 U.S.C.A. § 2304, but did not further revise the statute. Pub.L.No.90–500 (1968).

> If there had been a desire to make federal procurement policy bow to state price-fixing in the face of the contrary policy expressed in the Regulation, we can only believe that the objectives of the Act would have been differently stated.

371 U.S. 260, 83 S.Ct. 436.

Nor do we find Penn Dairies, Inc. v. Milk Control Commission of Pennsylvania, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748 (1943), or United States v. State Corporation Commission of Virginia, 345 F.Supp. 843 (E.D.Va.1971), to be persuasive in this case. In each of those cases the controlling factor was a regulation which specifically deferred to state regulation. *See*, Penn Dairies, 318 U.S. at 277, 63 S.Ct. at 624; United States v. State Corporation Commission, 345 F.Supp. at 847. The regulations pertinent to the case here do not defer to state regulation, but, like those in *Paul*, require federal officers to seek competition and the lowest cost to the federal government.

Thus we find that the state regulatory scheme here violates the national procurement policy as expressed in *Paul*, and is an unconstitutional burden on the United States in the exercise of its constitutional powers. *Accord*, United States v. Georgia Public Service Commission, 371 U.S. 285, 83 S.Ct. 397, 9 L.Ed. 2d 317 (1963); Public Utilities Commission of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 740 (1958.)

The General Order of the North Carolina Utilities Commission in Docket No. M–100, Sub. 47 as it applies to carriers serving the United States Army will be enjoined.

1. The regulations relevant to the intrastate transportation and storage of household goods by the Armed Services are: Armed Services Procurement Regulation, ¶¶ 22–600.1, –600.4 (Rev. 8, Sept. 30, 1970); Department of Defense Regulations, 4500.-34–R, ¶ 1004(c)(1) (Aug. 19, 1971); Department of Defense Regulations, 4500.-34–R, ¶ 1002(c) (May 1, 1971).